### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA    )
EX REL DEBRA A. SHAW,    )
    )
        Plaintiffs,    )
    )
      vs.    )      No. CIV-95-950-M
    )
AAA ENGINEERING & DRAFTING, INC.,  )
et al.,    )

### REPORT AND RECOMMENDATION

Pursuant to an order of referral by United States District Judge Vicki Miles-LaGrange [Doc. No. 716], the Motion by J. William Bennett for Rule 11 Sanctions against Attorney Marilyn Barringer-Thomson [Doc. No. 715] is before the undersigned Magistrate Judge for the issuance of a Report and Recommendation.  Ms. Barringer-Thomson has filed her responses to Mr. Bennett's motion [Doc. Nos. 732, 738 and 740], and the matter is now at issue.

Mr. Bennett, a non-party to this action, was served in Oregon by certified mail with a subpoena issued by this court commanding him to produce certain documents in Oklahoma City at the offices of Plaintiff's counsel, Ms. Barringer-Thomson.  Mr. Bennett subsequently filed a motion to quash the subpoena [Doc. No. 684].[1]  It is Mr. Bennett's claim in his request for sanctions that Ms. Barringer-Thomson made certain allegations and other factual contentions pertaining to Mr. Bennett in two briefs [Doc. Nos. 702 and 703] filed in response to the motion to quash and that such allegations and factual

---

[1]This is Mr. Bennett's second motion to quash the subpoena.  The extensive history of the first motion to quash will not be recited because it is irrelevant to the motion for sanctions.

contentions were false and lacked evidentiary support.  Mr. Bennett contends that Ms.

Barringer-Thomson thereby violated the provisions of Rule 11(b)(3), Fed. R. Civ. P.:

> (b) **Representations to Court.**  By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, –
>
> * * *
>
> > (1) the allegations and other factual contentions have evidentiary support . . . .

Rule 11(b)(3), Fed. R. Civ. P.

Before considering the merits of Mr. Bennett's request for sanctions under Rule

11(c), Fed. R. Civ. P.,[2] the court must first examine whether the procedural requirements

for the initiation of a Rule 11 motion have been met by Mr. Bennett.

## Procedural Requirements Under Rule 11

A threshold matter that has not been addressed by either litigant is whether Mr.

Bennett – a non-party – has standing to bring a motion under Rule 11.  *See New York*

*News, Inc. v. Kheel,* 972 F. 2d 482, 488 (2nd Cir. 1992) ("We believe as a general rule only

parties to an action and certain other participants have standing to move for sanctions

under Rule 11.").  Despite the general rule limiting Rule 11 to parties, where, as here, a

non-party such as Mr. Bennett has been involuntarily drawn into the action by subpoena

---

[2]Rule 11(c), Fed. R. Civ. P., states:

(c) **Sanctions.**  If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

Rule 11(c), Fed. R. Civ. P.

and has been required to incur legal fees to resist such subpoena, that non-party should

be no less entitled to employ Rule 11 to challenge allegations made about him in court

filings than a party brought into the case by summons.  *See generally Nyer v. Winterthur,*

290 F.3d 456, 459 (1st Cir. 2002) ("In limited circumstances, however, a non-party may

have standing to move for Rule 11 sanctions."); *Port Drum Company v. Umphrey,* 852

F.2d 148, 151 (5th Cir. 1988)("It is conceivable . . . that . . . [a non-party] could assert, by

motion, that one of the parties is violating Rule 11, to its detriment as a non-party

witness."); *Greenberg v. Sala,* 822 F.2d 882, 885 (9th Cir. 1987) (Rule 11 motion permitted

for named defendants who were never served but who incurred costs and expenses by

reason of the filing of a complaint) and, *Westmoreland v. CBS, Inc.,* 770 F.2d 1168 (D.C.

Cir. 1985) (non-party witness entitled to initiate Rule 11 motion).  The undersigned finds

under the facts and circumstances of this case that Mr. Bennett, a non-party, has standing

to initiate this motion for sanctions under Rule 11.

Mr. Bennett has likewise cleared the procedural hurdles of Rule 11(c)(1)(A):

> A motion for sanctions under this rule shall be made separately from other
> motions or requests and shall describe the specific conduct alleged to
> violate subdivision (b).  It shall be served as provided in Rule 5, but shall
> not be filed with or presented to the count unless, within 21 days after
> service of the motion . . . the challenged paper, claim, defense, contention,
> allegation, or denial is not withdrawn or appropriately corrected.

Rule 11(c)(1)(A), Fed. R. Civ. P.

Mr. Bennett's motion was separately made and points to specific factual

contentions made by Ms. Barringer-Thomson in Plaintiff's Brief in Opposition to Attorney

Bennett's (Second) Motion to Quash February 12, 2003 Subpoena Issued to Bennett [Doc.

No. 702] and repeated in Plaintiff's First Motion to Supplement Brief in Opposition to

Attorney Bennett's (Second) Motion to Quash February 12, 2003 Subpoena Issued to Bennett [Doc. No. 703]; the motion also explains why the contentions lack evidentiary support and, consequently, violate Rule 11(b)(3) [Doc. No. 715, pp. 1 - 3].  The motion's Special Certificate of Service reflects that Mr. Bennett served the motion on Ms. Barringer-Thomson on November 18, 2005, "advising that pursuant to the provisions of Rule 11(c)(1)(A), Federal Rules of Civil Procedure that filing with and presentation to the Court was deferred." *Id.* at p. 10.[3]  The Special Certificate of Service further discloses that Ms. Barringer-Thomson did not withdraw the challenged contentions within the twenty-one  day period[4] allowed by the rule and that the motion was, on December 19, 2005, filed of record.  *Id.*  Accordingly, all procedural prerequisites to the consideration of the merits Mr. Bennett's motion have been met.

**Merits of the Motion for Sanctions**

On November 2, 2005, Ms. Barringer-Thomson filed a brief in opposition to Mr. Bennett's motion to quash wherein she stated that, "Privileges are waived when the client asserts claims or defenses that put his attorney's advice at issue in the litigation." [Doc. No. 702, p. 6].  After citing supporting case authority, she added the following:

---

[3]An exhibit [Doc. No. 715, Exhibit 1]to Mr. Bennett's motion reveals that Mr. Bennett gave informal notice to Ms. Barringer-Thomson prior to serving his motion as contemplated by the Advisory Committee Notes to the 1993 Amendments to subdivision (c) of Rule 11: "In most cases, however, counsel should be expected to give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion. Rule 11, Fed.R.Civ.P., Adv. Comm. Notes, 1993 Amend.

[4]The Advisory Committee Notes in connection with the 1993 Amendments to Rule 11(c) state that, "These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specific allegation."  Rule 11, Adv. Comm. Notes, 1993 Amend.

> Plaintiff's Exhibit 1, Extracts of 10-13-05 Transcript of Evidentiary Hearing, at pgs. ___ conducted by the Honorable Judge Bruce Jenkins (Charles Ross Anderson testified that Bennett told him to transfer assets from AAA Engineering & Drafting after Shaw's judgments and Anderson's most recent transfer occurred between June and October 2005 when he transferred AAA's dba American Adventures Association to himself).

Doc. No. 702, p.6 (footnote omitted).  Despite Ms. Barringer-Thomson's reference, no exhibit was included with her brief in opposition.

By e-mail dated November 4, 2005, counsel for Mr. Bennett advised Ms. Barringer-Thomson as follows:

> You have made allegations and other factual contentions in Plaintiff's Brief in Opposition to Attorney Bennett's (Second) Motion to Quash February 12, 2003 Subpoena Issued to Bennett filed in USDC WDOK Case No. CIV 95-950-M on November 2, 2005 that lack evidentiary support and which are in fact contrary to the evidence.
>
> The incomplete allegations at page 6, pertaining to the testimony in the hearing before Judge Bruce Jenkins on October 13, 2005 that: "Charles Ross Anderson testified that Bennett told him to transfer assets from AAA Engineering and Drafting after Shaw's judgments . . ." is not a correct statement.
>
> The transcript of the hearing of October 13, 2005 in the proceedings in the District of Utah shows that the only reference to advice from J. William Bennett is that Bennett provided C. Ross Anderson with "advice" in connection with the preparation by Anderson of the Bill of Sale dated February 15, 1997 by providing Anderson with a sample of that (referring to the Bill of Sale).  See Transcript, pg. 45, ln. 17 through pg. 46, ln. 6.  This occurred before the verdict was rendered in the case on May 8, 1997 and before the Judgment was entered June 27, 1997.
>
> You are requested to withdraw or appropriately correct this misstatement by the close of business, November 9, 2005.  If you fail to take action on this request, we will seek leave to file a Reply to Plaintiff's Brief in Opposition to bring this to the attention of the Court and move for sanctions because the misrepresentation at that juncture will be intentional.

Doc. No. 715, Exhibit 1.

Ms. Barringer-Thomson responded by e-mail dated November 5, 2005:

> We will file a motion to supplement our response in this case with relevant extracts of the October 13, 2005 transcript that ***we purchased and recently received.***  The transcript speaks for itself in light of your client's historical actions and continuous asset transfers by your client with others.  We requested and paid for the October 13th 2005 transcript of the evidentiary hearing containing the testimony of Charles Ross Anderson because of the continued asset transfers commenced by your client J. William Bennett and others.
>
> I attended the October 13th hearing in Salt Lake City, Utah and heard the testimony.  Perhaps you (Mr. Abowitz) and Mr. Gray should attend proceedings in Utah so I will not have to take my valuable time to respond to email communications like this one.

Doc. No. 715, Exhibit 2.

As represented in the foregoing e-mail, on November 8, 2005, Ms. Barringer-Thomson filed a motion on Plaintiff's behalf to supplement the brief in opposition [Doc. No. 702] to Mr. Bennett's motion to quash with a copy of the transcript of the October 13, 2005, Utah bankruptcy hearing along with the exhibits admitted at the hearing.  Ms. Barringer-Thomson did not withdraw the statement challenged by Mr. Bennett but, instead, repeated it:

> Plaintiff's November 2, 2005 brief [Doc. 702] at page 6 ¶ 1, cites to "Plaintiff's Exhibit 1, Extracts of 10-13-05 Transcript of Evidentiary hearing, at pgs. _____ conducted by the Honorable Judge Bruce Jenkins (Charles Ross Anderson testified that Bennett told him to transfer assets from AAA Engineering & Drafting after Shaw's judgments and Anderson's most recent transfer occurred between June and October 2005 when he transferred AAA's dba American Adventures Association to himself)."   wherein Charles Ross Anderson was questioned by the Court and testified regarding asset transfers he was told to make by his attorney J. William Bennett and by his accountant C. Wyn Bowman.

Doc. No. 703, pp. 1 - 2.

In this same brief, Ms. Barringer-Thomson argued on Plaintiff's behalf that such "transcript shows":

> The Court's questions to Charles Ross Anderson regarding the identity of persons who advised him to take assets instead of money and other transaction(s); and, Charles Ross Anderson testimony that his accounting firm Huber, Erickson and Bowman, and Winn (sic) Bowman; and, his attorney J. William Bennett advised him and provided him with sample forms to utilized in his transfers.  Plaintiff's Exhibit 1 at 44, L 23 - 25; at 45 - 46.

Doc. No. 703, p. 2.  As Mr. Bennett had advised Ms. Barringer-Thomson by his November 4, 2005, e-mail, however, the testimony at these cited pages of the transcript was with regard to a February 15, 1997, bill of sale[5] prepared by Mr. Anderson based on a sample that had probably been e-mailed to him from Mr. Bennett.  *See* Doc. No. 703, Exhibit 1, pp. 44 - 46 and Exhibit No. 4, p. 1.

As reflected by the Special Certificate of Service on Mr. Bennett's motion for sanctions [Doc. No. 715, p. 10], Mr. Bennett then served Ms. Barringer-Thomson with an unfiled copy of his sanctions request on November 18, 2005.  Ms. Barringer-Thomson did not withdraw or clarify the challenged allegations.  The motion for sanctions was filed on December 19, 2005, repeating Mr. Bennett's claim that Ms. Barringer-Thomson had misrepresented to this court the substance of Charles Anderson's testimony in a Utah bankruptcy proceeding.  *Id.*

Ms. Barringer-Thomson responded to the motion for sanctions claiming, generally, that the "post judgment collection evidence filed on 11-8-05 [Doc. No. 703] supports summary in 11-2-05 brief in opposition [Doc. No. 702]." [Doc. No. 732, p. 1].   Because

---

[5]Judgment for Shaw was not entered until June 27, 1997, some four months after the date on the bill of sale [Doc. No. 703, Exhibit 4, pp. 1 - 4].

Ms. Barringer-Thomson's response did not adequately address the specific factual

contention raised by the motion for sanctions, the undersigned entered the following

order:

> The undersigned has carefully reviewed both the motion seeking sanctions and the response in opposition thereto [Doc. No. 732] and has determined that additional briefing is required from Plaintiff's counsel.  The focus of the motion requesting sanctions is narrow and straight-forward, relating solely to the veracity of a statement made by Marilyn Barringer-Thomson, Plaintiff's counsel,  in two filings in this case.  That statement – a statement relating to the testimony of Charles Ross Anderson at an October 13, 2005, evidentiary hearing in the United States District Court for the District of Utah, Central Division, Case No. 2:02CV-225 – is as follows: "Charles Ross Anderson testified that Bennett told him to transfer assets from AAA Engineering & Drafting after Shaw's judgments. . . ." [Doc. Nos. 702, p. 6 and 703, p. 1].
>
> The undersigned has also carefully reviewed the transcript of the October 13, 2005, evidentiary hearing and has been able to locate only one instance where Mr. Anderson testified with regard to advice received from J. William Bennett.  That testimony was with regard to a February 15, 1997, bill of sale prepared by Mr. Anderson based on a sample that had probably been e-mailed to him from Bennett [Doc. No. 703, Exhibit No. 1, pp. 12, 14, 45 and 46, Exhibit No. 4, p. 1].
>
> Accordingly, in order that the undersigned can determine the veracity of the challenged statement, Plaintiff's counsel is directed to file, on or before January 17, 2006, a supplemental response addressing *only* the issue of where within the October 13, 2005, transcript, "Charles Ross Anderson testified that Bennett told him to transfer assets from AAA Engineering & Drafting after Shaw's judgments."  [Doc. Nos. 702, p. 6 and 703, p. 1].

Doc. No. 733, pp. 1 - 2 (footnote omitted).

Ms. Barringer-Thomson then filed a motion requesting an extension of time in

order to respond to the foregoing order [Doc. No. 738].  There, she stated:

> The October 13, 2005 transcript should be considered in light of the documents received by Plaintiff prior to the October 13, 2006 hearing and prior to the filing of pleadings presently in issue.  Such documents are

indicative of the facts that J. William Bennett was assisting in a series of transfer actions (as opposed to any one isolated transfer).

* * *

Additional time is needed for the undersigned to go through the transcript to show how the transcript relates to the documents which indicate that Mr. Bennett was assisting and working with various individuals after the May 1997 verdict and June 1997 and March 1998 judgments based upon the verdict.

Doc. No. 738, pp. 2 -3 .

The undersigned granted the requested extension of time but sought, once again, to focus Ms. Barringer-Thomson's attention on the evidentiary basis for the actual statement challenged by Mr. Bennett, reminding her that "this court has ordered a response addressing *only* where within the October 13, 2005, transcript Mr. Anderson *testified* that Mr. Bennett told him to transfer AAA assets *after* Shaw's judgments." [Doc. No. 739].

Ms. Barringer-Thomson's final response, however, failed to point to any testimony by Mr. Anderson that Mr. Bennett told him to transfer AAA assets after Shaw's judgments [Tr. 740]. The undersigned has reviewed the eleven pages of Ms. Barringer-Thomson's brief containing excerpts from the transcript and has located the word "lawyer" or "attorney" only three times and the name "Bennett" only once. The first use of the word "lawyer" or "attorney" by Mr. Anderson comes in the following context:

BY MR. KEPPNER: Q  Your testify was that when the original application was filed it was filed as an application filed by Triple A Engineering, right?
A  Yes, in 1969.
Q  And since that time you haven't filed anything with the state indicating that that should be changed to a different application, is that right?

|  | A | Yes, I have. It is now in my name as Charles Ross Anderson. |
|---|---|---|
|  | Q | When did you file that change? |
|  | A | I don't recall the exact date. |
| [at 31, L1] | Q | Do you have a copy of that document showing the change? |
|  | A | I do. |
|  | Q | Have you ever given it to your lawyer? |
|  | A | I don't remember. |

Doc. No. 740, p. 4.  There is, obviously,  nothing in the above-quoted testimony of Mr.

Anderson suggesting that Mr. "Bennett told him to transfer assets from AAA Engineering

& Drafting after Shaw's judgments." [Doc. No. 702, p. 6; Doc. No. 703, p.1].

The second and third uses of the word "attorney" or "lawyer" and the sole use of

the name "Bennett" occur in the following testimony by Mr. Anderson:

| THE COURT: | Q | Okay. Who prepared the document that purports to be a bill of sale? |
|---|---|---|
|  | A | Uh, I did. |
|  | Q | You did? |
|  | A | Uh-huh. |
|  | Q | Okay. And that's where you purported to sell from the engineering company to yourself items set forth in the bill of sale? |
|  | A | Correct. I had advice from my [at 46, L1] attorney.  In fact he probably E mailed me a sample of that prior to my preparation of it. |
|  | Q | And who was your attorney then? |
|  | A | J. William Bennett. |

Doc. No. 740, p. 8 (footnote omitted).  At most, this testimony by Mr. Anderson

establishes that he communicated in some fashion with his attorney, Mr. Bennett, with

regard to a bill of sale and received some unspecified advice and "probably" a sample, by

e-mail, of the bill of sale.  The Bill of Sale & Note received into evidence at the hearing,

however, was dated February 15, 1997, a date *prior* to the June 27, 1997, judgment in this

case.  *See* Doc. No. 703, Exhibit 1, pp. 14 - 15 and 17 - 19, Exhibit 5, pp. 1 - 4; Doc. No. 115.

It continues to be Ms. Barringer-Thomson's argument that, "The October 13, 2005 transcript should be considered in light of the documents received by Plaintiff prior to the October 13, 2005 hearing and prior to the filing of the pleadings presently in issue. The proffered documents are indicative of the facts that J. William Bennett was assisting in a series of transfer actions (as opposed to any one isolated transfer) during the relevant time period." [Doc. No. 740, p. 1]. This argument, however,  has no bearing on the issue for determination here.  Ms. Barringer-Thomson did not represent in two briefs filed with this court that certain *documents* establish that Mr. Bennett was assisting in a series of transfer actions during a certain time period.  What she represented as a factual assertion was that at an October 13, 2005, evidentiary hearing before the Honorable Judge Bruce Jenkins "Charles Ross Anderson testified that Bennett told him to transfer assets from AAA Engineering & Drafting after Shaw's judgments." [Doc. No.  702, p. 6; Doc. No. 703, p. 1].  Mr. Bennett, who viewed Ms. Barringer-Thomson's assertion as an attack on his integrity as an attorney [Doc. No. 715, p. 7], promptly requested through informal communication that the allegation be withdrawn.  *Id.*, Exhibit 1.  Rather than withdraw it, she repeated it [Doc. No. 703, p.1].  She clearly had the transcript at this point because she attached it as an exhibit to her brief.  *Id.,* Exhibit 1.  Upon service of Mr. Bennett's unfiled sanctions motion she had yet another opportunity to withdraw the inaccurate contention but, once again, failed to do so.

The undersigned finds that Ms. Barringer-Thomson violated Rule 11(b)(3), Fed. R. Civ. P.  As counsel for Plaintiff, Ms. Barringer-Thomson submitted two briefs to this court containing allegations or other factual contentions that are wholly lacking in evidentiary support [Doc. Nos. 702 and 703].  Each of these briefs stated that at an October 13, 2005, evidentiary hearing before the Honorable Judge Bruce Jenkins "Charles Ross Anderson testified that Bennett told him to transfer assets from AAA Engineering & Drafting after Shaw's judgments." [Doc. No.  702, p. 6; Doc. No. 703, p. 1].  Based on a review of the transcript of that evidentiary hearing [Doc. No. 703, Exhibit 1], the undersigned finds that Mr. Anderson did not so testify.  The undersigned finds that *no* reasonable and competent attorney would believe otherwise.  *See White v. General Motors Corp., Inc.,* 908 F.2d 675, 680 (10th Cir. 1990) ("[A]n attorney's actions must be objectively reasonable in order to avoid Rule 11 sanctions.").

**Ms. Barringer-Thomson's Request for a Hearing**

In responding to Mr. Bennett's motion for sanctions, Ms. Barringer-Thomson requested that the court hold an evidentiary hearing and require the attendance of Mr. Bennett and Mr. Anderson [Doc. No. 732, p. 8]. The Advisory Committee Notes in connection with the 1993 Amendments to Rule 11(c) state that, "Whether the matter should be decided solely on the basis of written submissions or should be scheduled for oral argument (or, indeed, for evidentiary presentation) will depend on the circumstances." Rule 11, Adv. Comm. Notes, 1993 Amend.  Under the circumstances of this case, no hearing is required; the transcript is the only necessary evidence.

**Recommended Sanctions**

It is well-established that the overarching goal of Rule 11 sanctions is deterrence. *White,* 908 F.2d at 683.  Moreover, while the award of attorney's fees and expenses – one of the sanctions sought by Mr. Bennett and the one found appropriate by the undersigned – is authorized by Rule 11(c)(1)(A), *full* compensation is not mandated as "[t]he appropriate sanction should be the least severe sanction adequate to deter and punish the [attorney]." *Id.* at 684 (citations omitted).

The undersigned finds that Ms. Barringer-Thomson has demonstrated that she is not easily deterred.  She has inexplicably refused to withdraw a contention that is readily disproved upon the reading of a transcript.  Accordingly, the undersigned finds that payment by Ms. Barringer-Thomson of the full amount of the *reasonable* attorney's fees and expenses incurred by Mr. Bennett in presenting this motion for sanctions appears necessary to deter similar conduct by Ms. Barringer-Thomson.  In this connection, the undersigned recommends that should the undersigned's recommendations on the merits of the motion for sanctions be adopted by this court, an order be issued directing Mr. Bennett to submit documentation detailing and supporting such fees and expenses in order that the court, or the undersigned upon referral, may "independently analyze the reasonableness of the requested fees and expenses." *Id.* (citation omitted).  Ms. Barringer-Thomson should be given the opportunity to respond to Mr. Bennett's documentation as well as to present evidence, if she so chooses, on her financial status. *Id.* at 685.  A final determination can then be made as to whether an

13

award of the full amount of attorney's fees and expenses incurred by Mr. Bennett is "the least severe sanction adequate to deter" similar conduct by Ms. Barringer-Thomson. *Id.*

### RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the foregoing reasons, the undersigned recommends that Marilyn Barringer-Thomson be sanctioned for submitting two briefs to this court [Doc. Nos. 702 and 703] that contain allegations and factual contentions lacking in evidentiary support. Subject to a final determination of the reasonableness of the attorney's fees and expenses incurred by J. William Bennett in presenting his motion for sanctions, the undersigned further recommends that an award of the full amount of such attorney's fees and expenses appears necessary to deter future misconduct by Marilyn Barringer-Thomson.

The parties are advised of their right to object to this Report and Recommendation by March 28, 2006, in accordance with 28 U.S.C. §636 and Local Civil Rule 72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 8th day of March, 2006.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE

14